1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CARY H. FREEMAN, ) | Case No. 1:07-CV-00219  TAG |
| ) | |
| Plaintiff, ) | ORDER GRANTING MOTION FOR |
| ) | SUMMARY JUDGMENT |
| v. ) | (Doc. 13) |
| ) | |
| KERN COUNTY, KERN MEDICAL ) | ORDER DIRECTING CLERK OF COURT |
| CENTER, ) | TO ENTER JUDGMENT IN FAVOR OF |
| ) | DEFENDANTS AND AGAINST PLAINTIFF |
| ) | AND TO CLOSE THE CASE |
| Defendants. ) | |
| ) | |

**PROCEDURAL HISTORY**

Defendants Kern County and Kern Medical Center (collectively, the "Defendants") moved for summary judgment on Plaintiff Cary H. Freeman's six claims under Federal Rules of Civil Procedure 56 ("F.R.C.P."). (Doc. 13). Plaintiff Cary H. Freeman ("Plaintiff") filed an opposition to the motion. (Docs. 18-20). Plaintiff's claims derived from termination of Plaintiff's employment by Defendants. Defendants filed a reply. (Doc. 22). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a). The matter came on regularly for hearing before the Honorable Theresa A. Goldner, United States Magistrate Judge, in the United States District Court courtroom at 1300 18th Street, Bakersfield, CA, 93301, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73 (Doc. 5).

Plaintiff appeared by counsel Andrew Martin Schwartz. Defendants appeared by counsel Mark Lloyd Nations. Having considered the moving, opposition, and reply papers, as well as the oral arguments of counsel, the Court hereby GRANTS Defendants' motion for summary judgment for the reasons set forth below.

1

**FACTUAL BACKGROUND**

Plaintiff is an African American physician who was employed at Kern Medical Center ("KMC") as an ophthalmologist from September 1, 1987 until February 25, 2005. (Defendants' Separate Statement of Undisputed Material Facts ("UF") Nos. 1 & 2). As of 2005, the ethnic make–up of the physicians employed by KMC was fifty-three Caucasian, thirty-one Asian, two African American, nine Hispanic, two Filipino, and three listed as "other." (UF No. 3). Following multiple complaints and malpractice claims, KMC Risk Manager, Susie Price, was authorized in October 2004 to request Dr. Richard M. Handwerger ("Dr. Handwerger"), an independent board-certified ophthalmologist, to review six of Plaintiff's cases between 2001 and 2003 to determine whether Plaintiff was practicing with the proper standard of care. (UF Nos. 5 & 6).

On December 16, 2004, Dr. Handwerger issued a report reviewing the six cases, concluding that Plaintiff was a danger to his patients. (UF No. 7). Following receipt of Dr. Handwerger's December 16, 2004 report**,** Dr. Maureen Martin ("Dr. Martin"), the Chief of Surgery at KMC, asked Dr. Handwerger to prepare a follow-up report that addressed risk management issues, and whether, in Dr. Handwerger's opinion, Plaintiff should be allowed to continue operating on patients at KMC. On February 18, 2005, Dr. Handwerger issued a second report concluding that Plaintiff should not be allowed to operate on patients at KMC. (UF No. 8).

On February 25, 2005, following an incident where Plaintiff reportedly refused to see an indigent emergency room patient, Dr. Martin placed Plaintiff on paid administrative leave. (UF No. 9). On March 4, 2005, Plaintiff was asked to voluntarily withdraw his surgical privileges at KMC so that KMC would not have to take action which would be reportable to the medical board. (UF No. 10). On March 15, 2005, Plaintiff refused to surrender his surgical privileges. (UF No. 11).

On May 3, 2005, pursuant to KMC's bylaws, the Medical Executive Committee conducted its own investigation and ultimately appointed an ad hoc committee to conduct a formal corrective action investigation of Plaintiff's surgical practice. (UF Nos. 12, 13, & 14). The ad hoc committee met for the first time on June 2, 2005. (UF No. 15). It reviewed Dr. Handwerger's February, 2005 report and concluded that they needed a broader review of Plaintiff's cases. (Id.). The ad hoc committee asked the Quality Resource Center to review additional cases. (Id.).

1    The Quality Resource Center reviewed 16 additional cases involving Plaintiff's patients, and

2    reported back to the ad hoc committee.  (UF No. 16).  On June 14, 2005, the ad hoc committee

3    concluded that out of 16 cases between July 1, 2002, and June 3, 2005, eight of the patients treated

4    by Plaintiff had complications and four had questionable complications.  (UF No. 17).  On July 5,

5    2005, the ad hoc committee recommended that Plaintiff's surgical privileges be summarily

6    suspended until such time as the committee had completed its investigation.  **(**UF No. 18).

7    On July 6, 2005 Plaintiff's surgical privileges were suspended pursuant to Article XI, Sec.

8    11.3-2 of the KMC staff bylaws on the grounds that Plaintiff had an excessively high complication

9    rate, which posed an imminent danger to the health and safety of KMC patients.  Plaintiff was

10   notified of the suspension on that same day.  **(**UF No. 19).

11   At the ad hoc committee's recommendation, Dr. Daniel Rich ("Dr. Rich")**,** an independent

12   board-certified ophthalmologist, was retained by KMC to review 36 randomly selected surgical cases

13   handled by Plaintiff.  (UF Nos. 20 & 21).  On July 11, 2005, Dr. Rich concluded that based on his

14   review of 17 patient charts involving surgical procedures, Plaintiff's work fell below community

15   standards of care and posed a danger to patients.  (UF No. 22).  On July 13, 2005, Dr. Rich

16   concluded based on his review of an additional 19 patient charts that Plaintiff should not be allowed

17   to perform surgery.  (UF No. 23).

18   On July 19, 2005, in accordance with § 11.3-3 of the medical staff bylaws, the Medical

19   Executive Committee voted unanimously to continue suspension of Plaintiff's surgical privileges

20   and to recommend his termination. (UF No. 24).  The decision was based on Plaintiff's high rate of

21   complications in eye surgery cases, substandard surgical skills,  poor judgment during surgery, poor

22   record keeping and resultant danger to patients.  (Id.).  That same day, Plaintiff was informed of the

23   recommendations and advised of his rights.  (UF No. 25).

24   On July 20, 2005 KMC filed with the Medical Board of California a Health Facility/Peer

25   Review Reporting Form regarding the actions taken with regards to Plaintiff's surgical privileges,

26   pursuant to Cal. Business and Professions Code § 805.  (UF No. 37).  Prospective employers who

27   inquired about Plaintiff's status with KMC were referred to the 805 Health Facility Reporting Form

28   and Plaintiff himself.  (UF No. 38).  No additional information was provided to prospective

employers.  (Id.).  Because of the confidential nature of the deliberations and actions of the ad hoc committee and the Medical Executive Committee, information regarding the actions of those committees was not given to Plaintiff's co-workers.  (UF NO. 39).

Following Plaintiff's suspension and the recommended termination of his surgical privileges, Plaintiff's employment contract with KMC was terminated effective September 1, 2005, in accordance with § 13 of the contract of Plaintiff's employment contract with KMC.  (UF No. 27).  After Plaintiff waived his right to a hearing on his dismissal (UF Nos. 28-32), the hearing officer accepted Plaintiff's waiver and concluded he had accepted the recommendation of the Medical Executive Committee that his surgical privileges be terminated.  (UF No. 32).  On February 13, 2006, the Kern County Board of Supervisors upheld the findings of the hearing officer and recommended termination of Plaintiff's surgical privileges at KMC.  (UF No. 33).

At the time his surgical privileges were suspended, Plaintiff was under contract to KMC.  (UF No. 34).  That contract included Plaintiff's agreement to be subject to corrective action for unsatisfactory clinical performance as governed by the medical staff bylaws and that any appeal of corrective action based on unsatisfactory clinical performance would be governed by the applicable provisions of the medical staff bylaws.  (UF Nos. 35 & 36).

Plaintiff's position as ophthalmologist at KMC was not filled with a full-time physician.  In the immediate aftermath of Plaintiff's departure, surgical procedures that Plaintiff might have performed were referred to outside providers, and the KMC eye clinic where Plaintiff had practiced was temporarily closed.  (UF No. 40).  Since then, the eye clinic has re-opened two days per week and the services of an ophthalmologist have been secured on a part-time basis.  (Id.).  The part-time ophthalmologist is from Egypt.  (Id.).  Defendants' submitted numerous declarations from medical staff at KMC declaring that Plaintiff's suspension and termination were not racially or ethnically motivated, but were based entirely on his substandard performance as a surgeon and ophthalmologist.  (UF Nos. 41 & 42).

///

///

///

**DISCUSSION**

**I. Summary Judgment Legal Standards**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598 (1970); Poller v. Columbia Broadcast System, Inc., 368 U.S. 464, 467, 82 S. Ct. 486 (1962); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

Under summary judgment practice, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986) (quoting Fed. R. Civ. Proc. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file." Id. at 324. Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322-323. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348 (1986); First Nat'l. Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288-89, 88 S. Ct. 1575 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979).

In attempting to establish the existence of a factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a dispute exists. Fed. R. Civ.P. 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l. Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. at 248-249; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 288-289; T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); Poller, 368 U.S. at 468; S.E.C. v. Seaboard Corp., 677 F.2d 1301, 1305-1306 (9th Cir. 1982). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587-588 (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993(1962)); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th Cir. 1979).

Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight

1  Lines, 602 F. Supp. 1224, 1244-1245 (E.D. Cal. 1985).  The Court has no duty to search the record,

2  sua sponte, for some genuine issue of material fact; indeed, the Court may rely entirely on the

3  evidence of the moving party.  Guarino v. Brookfield Township Trustees, 980 F.2d 399, 403 (6th

4  Cir. 1992).  If the motion is based on deposition testimony, the Court may rely exclusively on

5  portions highlighted by the moving party and need not comb the deposition to discover conflicting

6  testimony.  Guarino, 980 F.2d at 403.  The Court is not obligated to consider matters not specifically

7  brought to its attention.  Thus, it is immaterial that helpful evidence may be located somewhere in

8  the record.  The opposition must designate and reference specific triable facts.  Frito-Lay, Inc. v.

9  Willoughby, 863 F.2d 1029, 1034 (D. C. Cir. 1988).   To demonstrate a genuine issue, the opposing

10  party "must do more than simply show that there is some metaphysical doubt as to the material

11  facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the

12  nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation

13  omitted).

14       Preliminarily, the Court notes that Plaintiff failed to follow the Local Rules of this Court by

15  filing a separate statement of undisputed facts in his response to the motion for summary judgment,

16  as required by Local Rule 56-260(b), which provides in pertinent part as follows:

17
      Any party opposing a motion for summary judgment or summary adjudication shall
      reproduce the itemized facts in the Statement of Undisputed Facts and admit those
18    facts that are undisputed and deny those that are disputed, including with each
      denial a citation to the particular portions of any pleading, affidavit, deposition,
19    interrogatory answer, admission or other document relied upon in support of that
      denial.
20

21       When a local rule such as that promulgated by the United States District Court for the Eastern

22  District of California has been promulgated, it serves as adequate notice to nonmoving parties that if

23  a genuine issue exists for trial, they must identify that issue and support it with evidentiary materials,

24  without the assistance of the judge or requiring the judge to sift through the entire court file.

25  Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec, 854 F.2d 1538, 1545

26  (9th Cir. 1988).  Where, as here, the nonmoving party has been put on notice by a local rule that he

27  bears the burden of pointing out disputed issues of fact, the local rule will be enforceable against

28  him.  Id.  In light of the summary judgment standard discussed above, the purpose of requiring such

   a document from the nonmoving party is obvious: it focuses the Court on the specific facts that the

1  nonmoving party contends are disputed and relieves the Court of the onerous task of sifting through

2  the entire record to determine if there is a single disputed issue of material fact that would preclude

3  summary judgment.

4         In this instance, Defendants' reply to Plaintiff's opposition points out Plaintiff's failure to

5  abide by the Local Rules in this regard and contends that Plaintiff's opposition fails to create a

6  disputed issue of material fact.  (Doc. 22,  p. 2).  If Defendants are correct, their motion should be

7  granted.  After carefully reviewing the evidence recited in Plaintiff's opposition and attempting to

8  correlate that evidence with Defendants' separate statement of undisputed facts, the Court agrees

9  with Defendants that Plaintiff's opposition fails to identify any disputed issues of material fact as to

10 any of Plaintiff's causes of action.  Thus, for the reasons discussed more fully below, the Court will

11 grant Defendants' motion for summary judgment.

12 **II.  Plaintiff's claims**

13        Plaintiff has alleged six claims: 1) violation of Title VII of the Civil Rights Act;  2) breach of

14 implied contract of employment; 3) breach of implied covenant of good faith and fair dealing;

15 4) violation of the California Fair Employment and Housing Act; 5) violation of public policy; and

16 6) defamation.  (Doc. 1, ¶ 9-31).  Defendants have asserted defenses to Plaintiff's allegations,

17 including the inability to prove that the adverse employment action was based on race, the inability

18 to prove the existence of any implied contracts or implied covenants, and the inability to prove

19 defamation.  As mentioned, Plaintiff has filed an opposition to Defendants' motion for summary

20 judgment.

21        **1.  Violation of Title VII of the Civil Rights Act**

22        Title VII prohibits an employer from "discriminat[ing] against any individual with respect to

23 his compensation, terms, conditions, or privileges of employment, because of such individual's race,

24 color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  To establish a prima facie case

25 of racial discrimination, the plaintiff must show that: 1) he is a member of a protected class;

26 2) he was subjected to an adverse employment action; 3) he was qualified for the position in

27 question; and 4) that the employer continued to seek applicants from persons of plaintiff's

28

1  qualifications or filled the position with an employee not of plaintiff's class. <u>McDonnell Douglas</u>

2  <u>Corp. v. Green</u>, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973).

3      If the plaintiff establishes a prima facie case of discrimination, then the burden shifts to the

4  defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action.

5  <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802. If the defendant is able to establish a nondiscriminatory

6  reason for the adverse action, then the burden shifts back to the plaintiff to prove that the reason

7  proffered by the defendant was a pretext for unlawful discrimination. <u>McDonnell Douglas Corp.</u>, 411

8  U.S. at 804. "Throughout this burden-shifting approach, the plaintiff bear[s] the ultimate burden of

9  proving, by a preponderance of the evidence, the intent to discriminate."

10  <u>St. Mary's Honor Center. v. Hicks</u>, 509 U.S. 502, 511, 113 S.Ct. 2742 (1993).

11              **a. <u>Protected class and adverse employment action</u>**

12      The first two elements of Plaintiff's Title VII claim are not in dispute. The parties do not

13  dispute the fact that the Plaintiff is an African American (Doc. 13, UF No. 1), nor do they dispute

14  that the Plaintiff was terminated from his employment at KMC. (Doc. 18, p. 5).

15              **b. <u>Plaintiff's qualification</u>**

16      The third element is in dispute. Plaintiff contends that he was qualified for the position and

17  was terminated based on his race. However, Plaintiff  has provided no evidence for these

18  contentions other than his statements that he has been working at KMC for 18 years. (Doc. 18,

19  p. 18). Instead, he has relied on the declaration of an expert, Dr. Kohn. (Doc. 19-2). Dr. Kohn's

20  declaration contains no opinions. Instead, it references what he describes as a peer review letter

21  report to Plaintiff's counsel in which he opines that the cases selected for peer review were not a

22  random sampling, but rather were deliberately skewed. Dr. Kohn's letter also opines that Dr.

23  Handwerger's reports were biased because he was an employee of KMC and, according to Plaintiff,

24  he knew Plaintiff prior to performing the peer reviews. (Doc. 18, p. 23-24).

25      Declarations are allowed on summary judgment motions to enable the Court to consider

26  testimony that would be admissible at trial. Fed. R. Civ.P. 56(e); Fed. R. Evid. 603. Affidavits on

27  summary judgment motions must made on personal knowledge, set forth admissible facts, and show

28  that the affiant is competent to testify on the matters stated in the affidavit. Fed. R. Civ.P. 56(e)(1).

If an affidavit refers to papers, sworn or certified copies of the papers must be attached to or served with the affidavit. Fed. R. Civ. P. 56(e)(1); Shuffle Master, Inc. v. MP Games LLC, 553 F. Supp. 2d 1202, 1210 ( D. Nevada 2008). "This means that if written documents are relied upon they actually must be exhibited; affidavits that purport to describe a document's substance or an interpretation of its content are insufficient." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure §Section 2722 (3d ed. 1998). In addition, when an expert's affidavit is proffered to raise a disputed issue, Rule 56 (e) requires the expert to set forth the facts upon which his opinion is based. "Just as the requirements for summary judgment are not met when a court makes unsubstantiated inferences about a third party's behavior, see e.g., Lujan National Wildlife Federation, 497 U.S. 871, 884-885, 110 S. Ct. 3186-3187, . . . (1990), they are not met when the plaintiff hires an outside expert to do the same." Wyoming v. Oklahoma, 502 U.S. 437, 468, 112 S. Ct. 789 (1992).

Dr. Kohn's declaration runs afoul of Rule 56(e) because it fails to include certified or sworn copies of all of the papers referred to in the declaration, none of which are attached to the declaration. Only one paper referred to in the declaration was served, i.e., an unsigned copy of a letter from Dr. Kohn to Plaintiff's counsel described as peer review report, which was served as an exhibit to Plaintiff's response to the instant motion. To the extent the declaration is proffered as an expert's declaration, it fails to include any of Dr. Kohn's opinions or the facts upon which they are based.

Plaintiff proffers the declaration to authenticate Dr. Kohn's unsigned letter as a "true and correct copy" of his report, and relies on the letter to prove facts and report Dr. Kohn's opinions. Dr. Kohn's letter violates Rule 56(e), because it is unsigned, unsworn, and not in the form of an affidavit. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 n. 17, 90 S. Ct.1598 (1970); United States v. One TRW, Model M14, 7.62 Caliber Rifle, 441 F. 3d 416, 426 (9th Cir. 2006); Carr v. Tatangelo, 338 F. 3d 1259, 1273 n. 26 (9th Cir. 2006); Provident Life and Acc. Inc.  Co. v. Goel, 274 F. 3d 984, 1000 (5th Cir. 2001); Shuffle Master, Inc., 553 F. Supp. 2d at 1210-1211;  but cf. Maytag Corp. v. Electrolux Home Products, Inc., 448 F. Supp. 2d 1034, 1046 (N.D. Iowa 2006)(collecting

cases)(holds that problem of unsworn expert report may be solved by appropriate affidavit). Moreover, although an expert opinion can be used to raise a triable issue of fact in an appropriate case, "[a]n expert report cannot be used to prove the existence of facts set forth therein. " In re Citric Acid Litigation, 191 F.3d 1090, 1102  (9th Cir. 1999); see Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 242, 113 S. Ct. 2578 (1993).

Dr. Kohn's declaration stating that the letter is a "true and correct" copy of his report does not remedy the problem of an unsworn report because the declaration does not reiterate or reaffirm the opinions expressed in the letter or the facts stated therein.  Thus, the substance and content of the letter remain entirely unsworn.  Accordingly, the Court disregards Dr. Kohn's letter because it violates Rule 56(e) and cannot be used to establish the facts referenced in the letter.  The Court has considered Dr. Kohn's declaration and concludes that it does not raise a genuine issue of fact as to whether Plaintiff's employment was wrongfully terminated because of his race.

Moreover, Defendants have presented ample evidence that Plaintiff was in fact no longer qualified for the position of ophthalmologist.  For example, the peer review reports showed that Plaintiff had an excessively high error rate and that he posed a danger to patients.  While the national average for complications is 2%, Plaintiff was experiencing a complication rate of over 50%.  These complications included blindness, seizures, laser damage to a healthy eye, capsular ruptures, corneal swelling and placement of the wrong lens.  (Court Doc. 13, p. 9-10).  In the Court's view, a complication rate 48% greater than the national average is a significant and strong indication that Plaintiff's practice was sub-standard.

Additionally, even if, arguendo, Plaintiff were able to establish a prima facie case, Defendants have articulated a nondiscriminatory reason for their conduct.  Defendants argue that Plaintiff's termination was not based on his race, but rather on Plaintiff's substandard surgical practice.  Defendants terminated Plaintiff's employment based on peer review reports from two independent, board-certified ophthalmologists. These peer review reports showed that Plaintiff's substandard skills posed a risk to patients. (Doc. 13, UF Nos. 19 & 20).  Neither of the reviewers were aware of Plaintiff's race at the time they performed the peer review. (Doc. 13, p. 7-8).  Dr.

Kohn's letter, Plaintiff's sole evidence on this issue, does not provide a factual basis to create a disputed issue of material fact regarding this claim.

### c. Other Applicants

With respect to the fourth element, i.e., that the employer continued to seek applicants from persons of Plaintiff's qualifications or filled the position with an employee not of Plaintiff's class, Plaintiff does not present any specific facts or any evidence of a prima facie case. Plaintiff failed to demonstrate the qualifications, or lack thereof, of the replacement physician, and he has failed to show that the replacement doctor was outside Plaintiff's class. Even if Plaintiff had successfully established a prima facie case under McDonnell, Defendants articulated a legitimate nondiscriminatory reason for terminating Plaintiff's employment. Defendants presented evidence showing that Plaintiff was no longer qualified to practice at KMC. Defendants hired a doctor who would minimize risks and problems previously caused by Plaintiff's poor performance. Thus, Plaintiff has failed to demonstrate that his termination was pretextual.

Accordingly, there are no disputed issues of material fact regarding the first cause of action, and Defendants are entitled to judgment as a matter of law. Accordingly, summary judgment should be granted as to this cause of action.

### 2. Breach of Implied Contract of Employment

In his second claim, Plaintiff alleges that Defendants breached an implied contract of employment because they terminated his employment without good cause. (Doc. 1, p. 21-23). Under California law, express and implied contracts are mutually exclusive. "There cannot be a valid, express contract and an implied contract...existing at the same time." Berkla v. Corel, Corp., 302 F.3d 909, 918 (9th Cir. 2002)(quoting Wal-Noon Corp. v. Hill, 45 Cal. App. 3d 605, 613 (1975)).

Here, Defendants have proffered evidence demonstrating that Plaintiff signed a written employment contract indicating that it would be the sole and entire agreement of the parties relating to "services, rights, obligations and covenants." (Doc. 13, Exh. U, p. 18). Defendants have also demonstrated "good cause" to terminate Plaintiff's employment, through peer review reports

indicting Plaintiff was performing surgeries below community standards of care. (Doc. 13, UF Nos. 7, 8, 24, 41 & 42). Plaintiff has provided no contrary admissible evidence. Accordingly, the Court finds that Defendants have negated an essential element of Plaintiff's second claim, i.e., the existence of an implied contract. Since there are no disputed issues regarding this claim, and since the Defendants are entitled to summary judgment in their favor on this claim, Defendants' motion for summary judgment should be granted as to the second claim.

### 3. Breach of Implied Covenant of Good Faith and Fair Dealing

In his third claim, Plaintiff alleges that Defendants breached an implied covenant of good faith and fair dealing when they terminated his employment using a "false and pretextual reason and in violation of defendant's applicable policies and procedures." (Doc. 1, p. 5). In Guz v. Bechtel National, Inc., 24 Cal.4th 317 (2000), the California Supreme Court, faced similarly with an employer's motion for summary judgment and a former employee's claim that the employer breached the implied covenant of good faith and fair dealing in layoff the employee, held that any breach of actual terms of an employment contract also violates the implied covenants; however, a breach of implied covenant obligations beyond the actual terms of the agreement is invalid. Id., at 327. As the court noted:

> "The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made. [Citations omitted.] The covenant thus cannot 'be endowed with an existence independent of its contractual underpinnings.' [Citations omitted.] It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement."

Guz, 24 Cal. 4th at 349-350.

Put another way, the remedy for breach of an employment agreement is solely contractual, and an implied covenant theory affords no separate measure of recovery. Guz, 24 Cal. 4th at 327. The implied covenant of good faith and fair dealing cannot impose substantive duties or limits on the contracting parties to which they did not actually agree. Guz, 24 Cal 4th at 350, 352.

///

13

Defendants deny that they breached an implied covenant of good faith and fair dealing.  As discussed above, Defendants have presented evidence demonstrating that Plaintiff signed an employment contract that represented the sole and entire agreement of the parties relating to "services, rights, obligations and covenants." (Doc. 13, Exh. U, p. 18).  Thus, that contract governed the employer-employee relationship between Plaintiff and Defendants and, while there is implied within that contract a covenant of good faith and fair dealing, such a covenant does not impose additional duties and responsibilities, or terms of employment on the parties, beyond those already set forth in the employment contract.  Guz, 24 Cal.4th at 350, 352.  To the extent that Plaintiff is contending that the implied covenant of good faith and fair dealing imposed such additional duties and responsibilities, Plaintiff is mistaken.

However, as mentioned, the covenant does require the parties to live up to their respective obligations within the contract.  Guz, 24 Cal. 4th 359-350.  Plaintiff alleges that Defendants dismissed him for "false and pretextual reasons" and failed to employ Defendants' own regulations and bylaws in so doing.  To the extent that such allegations are true, they would state a claim for a breach of the covenant of good faith and fair dealing.

As mentioned, however, Plaintiff has not identified a disputed issue as to any material fact relating to a pretextual wrongful dismissal, whether contract-based or governed by law, nor any violation of Defendants' own bylaws and regulations. Since the covenant of good faith and fair dealing does not impose any obligations beyond those already set forth in the contract, and since Plaintiff has failed to identify any disputed issues of material fact as to a breach of that contract, it necessarily follows that Plaintiff has failed to identify any disputed issues of material fact relating to a breach of the covenant of good faith and fair dealing.  Defendant is therefore entitled to summary judgment in its favor on Plaintiff's third claim.

**4. Violation of California Fair Employment and Housing Act**

In assessing claims brought under the California Fair Employment and Housing Act ("FEHA") California courts have looked to the framework established by federal courts applying federal anti-discrimination laws.  Guz v. Bechtel National, Inc., 24 Cal.4th at 354.  California courts

1  have adopted the three-stage burden-shifting test for weighing claims of disparate treatment as set

2  forth by the United States Supreme Court in <u>McDonnell</u>, 411 U.S. at 793.

3      Similar to the Plaintiff's Title VII claim, the plaintiff must first establish a prima facie case of

4  discrimination.  The plaintiff must produce evidence sufficient to support a finding that the plaintiff:

5  1) was a member of a protected class; 2) was qualified for the position he sought or was performing

6  competently in the position he held; 3) suffered an adverse employment action; and 4) was terminated

7  by some other circumstance suggesting a discriminatory motive.  <u>Guz</u>, 24 Cal.4th at 355. The burden

8  then shifts to the employer to provide evidence that its action was taken for a legitimate,

9  nondiscriminatory reason. <u>Id.</u>, at 355-356. If the employer is successful in making that showing, the

10  burden then shifts back to the plaintiff to show that the stated reason is a mere pretext, or to offer

11  additional evidence showing discriminatory motive. <u>Id.</u>, at 356.  The first three elements of FEHA

12  have already been addressed in Plaintiff's Title VII claim.  The remaining issue is whether Plaintiff

13  was terminated by some other circumstances suggesting a discriminatory motive.

14      Here, Defendants' Separate Statement of Undisputed Facts alleges that at all times relevant to

15  this dispute in 2005, KMC employed two African American physicians on its staff, i.e., Plaintiff and

16  one non-surgical physician.  (UF No. 3, Decl. of April Smith).  Plaintiff, however, maintains that his

17  termination was based on a discriminatory motive, alleging that he was the only African American

18  doctor employed at KMC, that he was paid at a lower base pay than other non-African American

19  physicians beginning at KMC, that he was given less staff to work with than other KMC physicians,

20  that he was not given adequate equipment as compared to other KMC physicians, that he was the only

21  KMC physician whose base salary was cut substantially, and that he was the only surgeon who did

22  not have residents or physician's assistants.

23      Plaintiff's opposition pleadings are devoid of any evidence demonstrating that Defendants'

24  non-discriminatory reasons were pretextual.  Instead, Plaintiff relies on mere averments and an

25  expert's opinion to establish facts to support his claims.  <u>See</u> <u>Brooke Group Ltd.</u>, 509 U.S. at 242.

26  This is insufficient to establish a disputed material fact.  As discussed above, Defendants have

27  provided evidence demonstrating that Plaintiff's employment was terminated for legitimate, non-

28

15

discriminatory reasons.  Plaintiff has failed to present contrary evidence that would create a fact dispute.  Accordingly, the Court finds that there are no genuine issues of material fact for trial, and that Defendant is entitled to judgment as a matter of law on Plaintiff's FEHA claim.

### 5. Violation of Public Policy

Plaintiff alleges that his termination violated public policy under FEHA. (Doc. 1, p. 6).  However, Plaintiff failed to provide any evidence specific to this claim.  Because the Court has determined that Defendants are entitled to judgment on the FEHA claim, the Court also concludes that there are no genuine issues of material fact with respect to the FEHA-based public policy claim that warrant preservation for trial.  See Hanson v. Lucky Stores, Inc., 74 Cal. App.4th 215, 229, (1999) (concluding that "because [Plaintiff's] FEHA claim fails, his claim for wrongful termination in violation of public policy fails.").  Although a claim for violation of public policy could theoretically involve different substantive or procedural elements than claims brought under FEHA, Plaintiff bears the burden of proffering contrary evidence to show that a genuine issue of fact precludes summary judgment.  Here, Defendants have presented evidence demonstrating legitimate, non-racial reasons for terminating Plaintiff's employment.  In response, Plaintiff has not proffered evidence that would create a factual dispute for resolution at trial.  Accordingly, Defendants are entitled to summary judgment as to this claim.

### 6. Defamation

Finally, Plaintiff alleges that he was defamed when Defendants communicated with Plaintiff's prospective employers regarding Plaintiff's poor performance. (Doc. 1, p. 7).  Defamation is an invasion of the interest in reputation, which involves the intentional publication of a statement of fact that is false.  Raghavan v. Boeing Co., 133 Cal. App.4th 1120, 1132 (2005).  A publication need not be to the "public" at large; communication to a single individual is sufficient. Id.  The truth of the offensive statements, however, is a complete defense against civil liability, regardless of bad faith or malicious purpose. Id.

Here, Plaintiff has failed to present evidence demonstrating that Defendants intentionally made false statements.  As discussed previously, the evidence currently before this Court establishes

that Defendants' decision to terminate Plaintiff was based on peer review reports performed by independent ophthalmologists, which demonstrated that Plaintiff was practicing below the community standards of care. (Doc. 13, UF Nos. 7, 8, 24, 41 & 42).  Although Plaintiff has expressed his belief regarding the reasons underlying his suspension and termination, he has not presented any admissible evidence to dispute Defendants' evidence.  Since the evidence on this point has not been disputed by Plaintiff with admissible, credible evidence of discrimination, Plaintiff fails in his attempt to sufficiently plead a claim for defamation.

Alternately, Defendants also assert that Plaintiff's defamation claim is based on hearsay evidence. (Doc. 22,  p. 14). Hearsay evidence is not competent to establish the truth of the matter asserted and is inadmissible.  Fed.R.Evid. 802.  In his opposition, Plaintiff refers to an alleged conversation between a prospective employer in Riverside with the CEO of KMC, during which the latter represented that Plaintiff was suspended for being incompetent, and a separate conversation between the same Riverside CEO and someone at Loma Linda University, during which the claim of incompetency was repeated. (Doc. 18, p. 37; Exh. 6, p. 4, ¶ 17).  Those conversations, however, are hearsay and therefore inadmissible unless they fall within an exception set forth in Rule 803 of the Federal Rules of Evidence.  Fed.R.Evid. 802.  Plaintiff has not proffered any evidence from either the CEO of the Riverside employer or any representative of Loma Linda University regarding the alleged defamation, nor has Plaintiff presented evidence to substantiate his claim regarding these communications, nor has Plaintiff suggested a hearsay exception that might be applicable to make those hearsay communications admissible.  Defendants strongly suggest that the conversations did not occur.  However, because Plaintiff has presented no admissible evidence to support his defamation claim, and because the only scant evidence Plaintiff has presented is inadmissible hearsay, Defendants are entitled to summary judgment on this claim.

///

///

///

1

## CONCLUSION AND ORDER

2

3        For the reasons discussed above, the Court concludes that there exists no genuine issue as to

any material fact, and that Defendants are entitled to judgment on all claims.  Accordingly, it is

4

hereby ordered that:

5

6        1.  Defendants' motion for summary judgment (Doc. 13), is GRANTED; and

7        2.  The Clerk of the Court is DIRECTED to enter judgment for Defendants County of Kern

8            and Kern Medical Center and against Plaintiff Cary H. Freeman and to close the case.

9

10

11   IT IS SO ORDERED.

12

13   Dated:   **August 27, 2008**                              **/s/ Theresa A. Goldner**
                                                          UNITED STATES MAGISTRATE JUDGE
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28